IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                                       **Case No. 3:16cr93**

**CARL ARMSTEAD JEFFERSON, JR.,**

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Carl Armstead Jefferson, Jr.'s Motions for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motions"). (ECF Nos. 43, 48.) The United States responded in opposition (the "Opposition"). (ECF No. 56.) Jefferson did not reply and the time to do so has expired. The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On July 19, 2016, a grand jury charged Jefferson, then thirty years old, with four counts: possession with intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. § 841 (Count One); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 (Count Two); possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count Three); and, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). (Indictment 1–2, ECF No. 8.) On November 2, 2016, Jefferson pled guilty to Counts One and Four. (Plea Agreement 1, ECF No. 19.)

The Presentence Report ("PSR") describes the conduct underlying Jefferson's offenses. (PSR ¶ 16, ECF No. 45.) On June 22, 2016, in Richmond, Virginia, law enforcement officers observed Jefferson and others behave suspiciously before driving to a nearby shopping center parking lot. (*Id.*) The officers pulled in front of the vehicle in which Jefferson was a passenger and performed an investigative stop. (*Id.*) The officers told the passengers to put their hands up, but Jefferson moved his hand out of the sight, which prompted the officers to remove him from the vehicle. (*Id.*) During his removal, Jefferson dropped crack cocaine and heroin on the ground. (*Id.*) In the vehicle where Jefferson sat, the officers discovered a firearm (a Kel Tec 9mm handgun), with eight rounds of ammunition in the magazine. (*Id.*) The officers later found more controlled substances in the vehicle and on Jefferson's body, ultimately recovering 22.22 grams of heroin and fentanyl, 49.28 grams of cocaine base, and 10.98 grams of cocaine hydrochloride. (*Id.*)

Prior to sentencing, the probation office prepared the PSR for Jefferson, summarizing his criminal history. Jefferson fell into criminal history category IV based on his prior convictions. (PSR ¶ 43.) In 2005, Jefferson was convicted in state court for possessing cocaine. (*Id.* ¶ 37.) In 2007, Jefferson was convicted in federal court for possession of a firearm by an unlawful user and possession of cocaine base. (*Id.* ¶ 38.) In 2010, Jefferson was again convicted in federal court of possession with intent to distribute cocaine base and possession of a firearm by a convicted felon. (*Id.* ¶ 39.) During this period of incarceration, Jefferson committed twenty disciplinary violations. (*Id.*) In 2015, Jefferson was convicted of two driving offenses. (*Id.* ¶ 40.)

Pursuant to the Sentencing Guidelines, Jefferson's Total Offense Level of 21 and Criminal History Category of IV resulted in an advisory Sentencing Guidelines range of sixty to

seventy-one months of imprisonment for Count One and sixty months of imprisonment for Count Four. (*Id.* ¶ 104.) On February 15, 2017, this Court sentenced Jefferson to sixty months' imprisonment for Count One and Count Four, running consecutively, followed by four years of supervised release. (J. 2–3, ECF No. 34.) At the time of sentencing, the PSR noted that, according to Jefferson's mother, he had chronic asthma and used an inhaler. (PSR ¶ 78.) The PSR further stated that Jefferson's last asthma-related hospitalization was when he was a teenager, and that Jefferson had good overall health with no history of illness or hospitalizations. (*Id.*)

Jefferson is currently housed at McDowell FCI. The Bureau of Prisons ("BOP") states that Jefferson will be released on May 13, 2027. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On February 11, 2021, Jefferson filed his *pro se* Motion for Compassionate Release, (ECF No. 43), after which his counsel submitted the instant Motion, (ECF No. 48). In the Motions, Jefferson broadly describes the current public health crisis in BOP facilities caused by COVID-19. (Mot. 18–22, ECF No. 48.) Jefferson, now thirty-four years old, contends that his asthma leaves him especially susceptible to the dangers of COVID-19. (Mot. 17–18.) He reports that he was hospitalized for asthma multiple times as a child, and that he continues to take medication for the condition as an adult. (*Id.* 17) Jefferson states that, upon release, he would reside with his aunt in Richmond, Virginia, secure a waste management job through a temporary employment agency, and help support his disabled mother and autistic cousin. (*Id.* 23.) Furthermore, Jefferson points out that his "criminal history is not violent," and that he has taken parenting classes and drug abuse education while incarcerated to better his life. (*Id.*)

3

The United States avers that on July 2, 2020, Jefferson submitted a request for compassionate release, which the BOP denied on July 20, 2020.[1] (Opp'n 2, ECF No. 56.) The United States opposes Jefferson's request for compassionate release, arguing that Jefferson "has failed to show that he has a medical condition that qualifies as an 'extraordinary and compelling reason for release,'" and that "the statutory sentencing factors in [] 18 U.S.C. § 3553(a) weigh against release." (Opp'n 1.) The United States recognizes that Jefferson contracted COVID-19 in November 2020, but he did not exhibit any serious symptoms or outwardly suffer from the virus. (*Id.* 7.) The United States argues that because Jefferson has been fully vaccinated, he faces less risk of again contracting COVID-19, which indicates that no extraordinary and compelling reasons exist for his release. (*Id.* 11–12.) The United States notes that Jefferson "has not established his asthma is moderate to severe," contending that his medical records do not indicate "hospitalization, asthma attack, or any other respiratory issues . . . while incarcerated due to his asthma." (*Id.* 13–14.) The United States explains that as of April 19, 2021, none of the inmates at FCI McDowell are positive for COVID-19 and 533 inmates are considered fully vaccinated. (*Id.* 16.) Furthermore, the United States argues that the statutory sentencing factors weigh against release because Jefferson possessed "20.22 grams of heroin, 49.28 grams of cocaine base, and 10.89 grams of cocaine hydrochloride" for distribution. (*Id.* 20.) In addition, the United States argues that granting compassionate release to Jefferson "would not provide adequate deterrence" because he has served less than half of his sentence. (*Id.* 23–24.)

---

[1] In his *pro se* Motion for Compassionate Release, Jefferson states that he requested the warden for compassionate release and was denied on unidentified dates. (ECF No. 43.) The United States' Opposition relies on unspecified "BOP records" to identify when Jefferson made the request for compassionate release to the warden of his BOP facility and when the warden denied the request. (Opp'n 2.) Nonetheless, the Parties do not dispute that Jefferson exhausted his administrative remedies.

As of July 20, 2021, McDowell FCI has vaccinated 132 staff members and 784 inmates. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir.

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

5

2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No.

6

3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[3]

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a

7

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

---

term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motion. Although no dispute exists that Jefferson has exhausted his administrative remedies before bringing the Motion, the Court finds that Jefferson does not offer "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, the weight of the applicable statutory sentencing factors does not favor granting compassionate release to Jefferson. *See* 18 U.S.C. § 3553(a).

Even as Jefferson points to CDC publication that identifies people with moderate to severe asthma as facing an increased level of risk from COVID-19, he fails to establish that he falls within that category of vulnerable individuals. (*See* Mot. 16.) Beyond his prescriptions for a non-daily-use inhaler and his mother's statement in the PSR that he suffered from asthma as a child, Jefferson does not provide particularized details regarding the severity of his asthma condition or hospitalization while incarcerated. (*See* Mot. Ex. A 5, 7, 8; PSR ¶ 78.) As such, the

record does not show that Jefferson raises serious concerns regarding his potential susceptibility to COVID-19, especially after receiving both doses of the COVID-19 vaccine.[4]

In any event, the Court will consider Jefferson's request under the applicable statutory sentencing factors. Upon review, Jefferson's underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Jefferson's repeated distribution offenses and his felony possession of a firearm reflect that he presents a danger both to himself and the community.

Turning to other § 3553(a) factors, the Court notes that Jefferson has served less than half of his original sentence and will not be released for another six years. The length of the remaining term of his sentence indicates that early release would not afford adequate deterrence to Jefferson's repeated criminal conduct. Furthermore, the disciplinary infractions that Jefferson accumulated in prison, combined with his convictions in the past decade, suggest that the Court need consider public safety and whether his sentence promotes respect for the law. The Court concludes that Jefferson's sentence adequately deters criminal conduct, protects the public, and promotes respect for the law. As such, the needs that his current sentence serve outweigh Jefferson's request for immediate release.

Jefferson further contends that his Motion should be granted because he has participated in BOP-sponsored parenting classes and a drug abuse education program. (Mot. 23.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both

---

[4] The Court recognizes that COVID-19 cases are increasing across the United States because of the Delta variant. *See* NEW YORK TIMES, *Delta Variant Widens Gulf Between 'Two Americas': Vaccinated and Unvaccinated*, July 15, 2021, available at: https://www.nytimes.com/2021/07/14/health/delta-variant-uk-usa.html. Even with the increase in nationwide COVID-19 cases, the record before the Court does not justify Jefferson's immediate release.

defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Jefferson has participated in parenting classes and a drug abuse program during his time in prison. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While the Court acknowledges that Jefferson participated in educational programs during his time in prison, such measures do not warrant his early release in light his disruptive conduct during incarceration, seriousness of his convictions, and the remaining time on his sentence.

Finally, the Court recognizes the grave health risks prisoners are facing during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, Jefferson has been fully vaccinated and the BOP reports most of its inmates at McDowell FCI have now been vaccinated. Considering the foregoing, the Court concludes that the current record does not justify Jefferson's immediate release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court will deny the Motions. (ECF Nos. 43, 48.) An appropriate Order shall issue.

_____
M. Hannah Lauck
United States District Judge

Date: July 29, 2021
Richmond, Virginia