**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA,**

        **v.**　　　　　　　　　　　　　　　　　**Criminal Case No. 3:16cr93**

**CARL ARMSTEAD JEFFERSON, JR.,**

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Carl Armstead Jefferson, Jr.'s *pro se* Motion for Compassionate Release (the "Motion" or "Motion for Compassionate Release"), (ECF No. 77), and Mr. Jefferson's counsel's Motion to Withdraw, (ECF No. 84). The United States responded in opposition to the Motion for Compassionate Release (ECF No. 86.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion for Compassionate Release and grant Mr. Jefferson's counsel's Motion to Withdraw.

### I. Background

#### A.　　Mr. Jefferson's Underlying Offense

On June 23, 2016, the United States charged Mr. Jefferson, by way of a Criminal Complaint, with Possession with Intent to Distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

On July 19, 2026, a Grand Jury for the Eastern District of Virginia, Richmond Division returned a four-count Indictment charging Mr. Jefferson with one count of Possession with Intent

to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); one count of Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); and one count of Possessing a Firearm in Furtherance of a Drug-Trafficking Crime in violation of 18 U.S.C. § 924(c). (ECF No. 8.)

On November 2, 2016, Mr. Jefferson pleaded guilty to Counts One (Possession with Intent to Distribute Cocaine Base) and Four (Possessing a Firearm in Furtherance of a Drug-Trafficking Crime) of the Indictment. (ECF Nos. 19, 20, 23.) As part of his plea agreement, Mr. Jefferson signed a Statement of Facts describing the conduct underlying his offense, which is summarized below. (ECF No. 20.)

On June 22, 2016, officers observed Mr. Jefferson arrive in the parking lot of a Food Lion as a passenger in a red Jeep. (ECF No. 20 ¶ 4.) Shortly afterward, the red Jeep carrying Mr. Jefferson exited the parking lot and pulled into an adjacent shopping center parking lot. (ECF No. 20 ¶ 4.)

Officers pulled their car in front of the Jeep to perform an investigatory stop, telling Mr. Jefferson and the other car occupants to put their hands up. (ECF No. 20 ¶ 5.) While he initially complied, Mr. Jefferson later placed his left hand near the center console and his back, which caused the officers to draw their weapons and demand the occupants show their hands to keep them visible. (ECF No. 20 ¶ 5.) One officer opened Mr. Jefferson's door and Mr. Jefferson removed bags from his left pocket that contained crack cocaine and heroin. (ECF No. 20 ¶ 5.) As Mr. Jefferson got out of the car, an officer noticed a firearm on the passenger seat. (ECF No. 20 ¶ 5.) A subsequent search of the car and Mr. Jefferson revealed additional quantities of heroin wrapped in folded lottery tickets, a small quantity of heroin from Mr. Jefferson's front

2

pants pocket, a digital scale from a bag at Jefferson's feet in passenger seat, and $1,524 in cash from Mr. Jefferson's person. (ECF No. 20 ¶¶ 6–7.)

### B.    Mr. Jefferson's Sentence

Prior to Mr. Jefferson's sentencing, the United States Probation Office prepared a Presentence Report ("PSR"), summarizing Mr. Jefferson's criminal history and personal characteristics. (ECF No. 25.)  The PSR reported a Total Offense Level of 21 and a Criminal History Category of IV, resulting in an advisory guideline range of 60 to 71 months of incarceration on Count One and a mandatory 60 months of incarceration on Count Four.  (ECF No. 25 ¶¶ 103–04.)  On February 15, 2017, the Court sentenced Mr. Jefferson to the lowest end of the recommended Guideline range on Count One:  60-months' incarceration.  The Court sentenced Mr. Jefferson to the mandatory 60 months' incarceration on Count Four that, as required by law, ran consecutively.  The Court further sentenced Mr. Jefferson to serve four years of supervised release on each Count served concurrently.  (ECF No. 34, at 2–3.)

On February 11, 2021, Mr. Jefferson filed his first *pro se* Motion for Compassionate release.  (ECF No. 43.)  The Court appointed counsel for Mr. Jefferson, (ECF No. 44), who filed an additional Motion for Compassionate release on his behalf.  (ECF No. 48).  In his first Motion for Compassionate Release, Mr. Jefferson argued that the Court should order his release because "the global COVID-19 pandemic combined with Mr. Jefferson's medical condition and the COVID-19 outbreak at his facility present[ed] an 'extraordinary and compelling reason' for compassionate release."  (ECF No. 48, at 1.)  On July 29, 2021, the Court denied his first Motion for Compassionate Release, determining that "the record d[id] not show that [Mr.] Jefferson raise[d] serious concerns regarding his potential susceptibility to COVID-19."  (ECF No. 59, at 9–10.)

On January 9, 2023, Mr. Jefferson filed his second *pro se* Motion for Compassionate Release.[1] (ECF No. 61.) The Court again appointed counsel for Mr. Jefferson, (ECF No. 62), who ultimately filed a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967) to withdraw as Mr. Jefferson's counsel because counsel "c[ould] not say that a request for relief on behalf of Mr. Jefferson ha[d] merit," (ECF No. 64, at 1). The Court granted counsel's motion to withdraw and allowed Mr. Jefferson to proceed *pro se*. (ECF No. 65.) But the Court also ordered Mr. Jefferson to file an amended *pro se* Motion for Compassionate Release that "stat[ed] with particularity" the grounds for his release. (ECF No. 65, at 1.) On February 13, 2023, Mr. Jefferson filed an amended *pro se* Motion for Compassionate Release, in which he argued that because his underlying offense was "not a crime of violence," he could not be convicted of 18 U.S.C. § 924(c). (ECF No. 66, at 2.) The Court rejected this argument and denied his *pro se* Motion for Compassionate release. (ECF No. 71.)

On October 15, 2024, Mr. Jefferson filed the instant Motion, his third, in which he seeks compassionate release on several grounds. (ECF No. 77.) On December 3, 2024, the Court appointed counsel for Mr. Jefferson. (ECF No. 79.) On February 6, 2025, Mr. Jefferson's counsel filed an *Anders* motion, in which counsel explained that, to his knowledge, "there is no meritorious argument" for Mr. Jefferson's compassionate release. (ECF No. 84, at 4.) As a result, Mr. Jefferson's counsel moved to withdraw his representation. (ECF No. 84, at 1.) On February 21, 2025, the United States Probation Office responded to Mr. Jefferson's Motion for Compassionate release and the United States responded in opposition to that Motion. (ECF Nos. 85, 86.)

---

[1] Mr. Jefferson styled his second *pro se* motion as a "Motion for Immediate Release." (ECF No. 61, at 1.)

4

## II. Compassionate Release Under the First Step Act

### A.    Legal Standard

Congress authorized "compassionate release" in 18 U.S.C. § 3582(c)(1)(A).[2] *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). 18 U.S.C. § 3582(c) recognizes the "general rule" that a court cannot modify a sentence once it has been imposed. *Burleigh*, 145 F.4th at 547. But 18 U.S.C. § 3582(c)(1)(A) contains "an exception to that rule, in which courts

---

[2] 18 U.S.C. § 3582(c)(1)(A) provides:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case–

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that–

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

5

may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification." *Id.*

A court can grant a compassionate release motion if it finds that:

(1) "extraordinary and compelling reasons warrant such a reduction,"

(2) "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission," and

(3) the 18 U.S.C. § 3553(a) factors weigh in favor of granting relief, to the extent that they are applicable.

*Burleigh*, 145 F.4th at 547 (citing 18 U.S.C. § 3582(c)(1)).

The defendant bears the burden to prove that extraordinary and compelling reasons exist for release under § 3582(c)(1)(A). *See United States v. Wesley*, No. 1:97-cr-382-2 (JKW), 2025 WL 2623449, at *2 (E.D. Va. Sept. 11, 2025) (citing *United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022)).

1. **Elements 1 and 2: Extraordinary and Compelling Reasons For a Reduction and the Sentencing Commission's Policy Statement**

"Elements one and two are supposed to work together." *Burleigh*, 145 F.4th at 547–48. "Because [§] 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release, the 'Sentencing Commission, pursuant to authority granted it by Congress,' does so instead." *Id.* (quoting *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026)).[3]

---

[3] The United States Supreme Court recently abrogated the United States Court of Appeals for the Fourth Circuit's decision in *McCoy*. *See Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026). The Court cites *McCoy* solely for its careful description of the process underlying a motion for compassionate release, *not* for any of *McCoy's* substantive determinations.

### a.    The Sentencing Commission's Policy Statement

The United States Sentencing Commission issued a policy statement governing extraordinary and compelling reasons that justify compassionate release.  *See* U.S.S.G. § 1B1.13(b).  It identifies six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.  These include:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated;

(2) the defendant's age;

(3) the defendant's family circumstances;

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer;

(5) "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)"; and

(6) the defendant's receipt of an "unusually long sentence."

U.S.S.G. § 1B1.13(b)(1)–(6).[4]

### b.    Other Extraordinary and Compelling Circumstances

Until recently, in considering whether "extraordinary and compelling reasons warrant . . . a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit were "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise," *McCoy*, 981 F.3d at 284 (quotation omitted), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) *abrogated on other grounds by Rutherford*, 2026 WL 1485535 (relying on *McCoy* and

---

[4] *See* Appendix A, U.S.S.G § 1B1.13(b) (2025).

7

reiterating that "district courts [can] consider any extraordinary and compelling reasons for release raised by a defendant"). The United States Court of Appeals for the Fourth Circuit explained that "there is no exhaustive list as to what may be considered extraordinary and compelling, and it is well within [a] district court's discretion to find other reasons"—that is, reasons other than those enumerated in the Sentencing Commission's policy statement— "constitut[ing] an extraordinary and compelling factor that weigh[s] in favor of granting relief." *United States v. Johnson*, 143 F.4th 212, 216 (4th Cir. 2025) (upholding district court's grant of compassionate release where "the district court found the sentencing disparities" between the defendant and his coconspirators "constituted an extraordinary and compelling reason to grant compassionate release").

The United States Supreme Court recently cabined that discretion. "While the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass *any consideration.*" *Rutherford*, 2026 WL 1485535, at *8 (emphasis added). The Supreme Court has explained that at least two circumstances are neither extraordinary nor compelling: (1) challenges to the validity of an individual's conviction and (2) sentencing disparities created by nonretroactive changes to sentencing law. *See Fernandez v. United States*, 608 U.S.—, 2026 WL 1485476, at *10 (2026); *Rutherford*, 2026 WL 1485535, at *8.

The Supreme Court explained in *Rutherford* that "the heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances," such as a prisoner's illness or family considerations. *Rutherford*, 2026 WL 1485535, at *7. And a prisoner's showing of even these "personal circumstances" requires meeting a "demanding standard." *Fernandez*, 2026 WL 1485476, at *7. To be sure, the Supreme Court has expressly refused to decide "whether there are reasons beyond personal circumstances that could qualify as

8

'extraordinary and compelling'" or whether other "kinds of postjudgment developments" may satisfy the standards of compassionate release. *Rutherford*, 2026 WL 1485535, at *8 & n.6. But the Supreme Court has made clear that neither § 3582 nor the Sentencing Commission's policy statement grant district courts limitless discretion to define "extraordinary and compelling circumstances."

If extraordinary and compelling circumstances exist, the Court "must then consider whether the factors in § 3553(a) support such a decrease." *Burleigh*, 145 F.4th at 548.

### 2.      Element 3:  The Statutory Sentencing Factors Enumerated in 18 U.S.C. § 3353(a)

"The § 3553(a) factors include 'the nature and circumstances of the offense' as well as the defendant's history and characteristics, the 'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th at 548 (quoting § 3553(a)(1), (3), (6)). "They also include the need for the sentence 'to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense,' to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as 'medical care' and 'vocational training.'" *Id.* (quoting § 3553(a)(2)).

District courts enjoy "'broad discretion'" in analyzing the § 3553(a) factors when considering a motion for compassionate release. *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)). And "district courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.'" *Id.* (quoting § 3553(a)).

### C.      Exhaustion of Administrative Remedies

A defendant seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court.  To do so, the

defendant must first apply to the BOP to bring a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). After making the request to BOP, a defendant can proceed to district court under the earlier of one of "two routes." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (quotation omitted).

Under the first route, a defendant may file a motion for compassionate release in a district court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his or her] behalf." 18 U.S.C. § 3582(c)(1)(A). That is, the defendant must exhaust his or her administrative remedies with the BOP. *Ferguson*, 55 F.4th at 268. The second route permits a defendant to "proceed directly to district court," *McCoy*, 981 F.3d at 283, *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026), if the BOP does not act on the defendant's request within "30 days from the receipt of such a request by the warden," 18 U.S.C. § 3582(c)(1)(A); *see also McCoy*, 981 F.3d at 283 ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."), *abrogated on other grounds by Rutherford v. United States*, 608 U.S.—, 2026 WL 1485535 (2026).

A court may waive the exhaustion requirement in certain circumstances, including where pursuing exhaustion would be futile, result in inadequate relief, or subject the defendant to undue prejudice. *United States v. Evans*, 504 F. Supp. 3d 519, 525 (E.D. Va. 2020). In addition, because the exhaustion requirement is "non-jurisdictional," it is "waived if . . . not timely raised" by the United States. *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

10

### III.  Analysis

Mr. Jefferson argues that the Court should reduce his sentence because (1) he has completed a substantial portion of his sentence; (2) he will have a job and housing in a shelter upon his release; (3) medical treatment in his facility is subpar; (4) he aims to assist his daughter and parents upon release; and, (5) he has engaged in rehabilitative efforts while incarcerated. (ECF No. 77, at 1–2.)  The United States responds that Mr. Jefferson has "not presented anything resembling an extraordinary and compelling reason for release." (ECF No. 86, at 3.)  Mr. Jefferson's counsel likewise moves to withdraw as his representative after determining that Mr. Jefferson's Motion lacks a meritorious ground for relief.  (ECF No. 84.)

For the reasons articulated below, the Court will deny the Motion for Compassionate Release, (ECF No. 77), and grant the Motion to withdraw, (ECF No. 84).  The Court concludes that (1) Mr. Jefferson's completion of even nine of the ten years of his sentence is not an extraordinary and compelling reason for his release; (2) his access to resources upon his release likewise does not favor relief; (3) Mr. Jefferson does not make a particularized showing of medical circumstances that would constitute an extraordinary and compelling reason; (4) Mr. Jefferson does not make a particularized showing of family circumstances that would constitute an extraordinary and compelling reason; and, (5) Mr. Jefferson's rehabilitation alone is not a basis for granting the Motion.  Accordingly, the Court concludes that Mr. Jefferson does not offer any extraordinary and compelling reasons to support his request for release.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Even if he had done so, the § 3553(a) factors weigh against his release.

### A.    The Court Will Grant Mr. Jefferson's Counsel's Motion to Withdraw

As directed by the Court's December 3, 2024 Order, (ECF No. 79), Mr. Jefferson's counsel filed a Motion to Withdraw based on his finding that, after a conscientious review of Mr.

Jefferson's case, his request for relief lacks merit, (ECF No. 84, at 1). Mr. Jefferson's counsel makes this finding because "[b]ased on the information known to counsel, there is no meritorious argument that Mr. Jefferson's circumstances meet any of the [Sentencing Commission's] Policy Statement's enumerated grounds." (ECF No. 84, at 4.) The Court will therefore grant Mr. Jefferson's counsel's Motion to Withdraw. (ECF No. 84.)

### B.    Mr. Jefferson has Exhausted his Administrative Remedies

Mr. Jefferson first contends that he "exhaust[ed] his [administrative] remedies." (ECF No. 77, at 1.) The United States does not argue otherwise. Because the United States does not argue that Mr. Jefferson failed to exhaust his remedies, it waived any argument that Mr. Jefferson's Motion for Compassionate Release is barred on this ground. *Muhammad*, 16 F.4th at 129–30. And, in any event, the Court waives the exhaustion requirement because requiring exhaustion given Mr. Jefferson's upcoming release would result in inadequate relief or otherwise prejudice Mr. Jefferson. *See Evans*, 504 F. Supp. 3d at 525. The Court therefore proceeds to consider the merits of Mr. Jefferson's Motion for Compassionate Release.

### C.    Elements 1 and 2:  The Motion for Compassionate Release Does Not Establish Extraordinary and Compelling Reasons for Mr. Jefferson's Release

Mr. Jefferson argues that extraordinary and compelling circumstances exist for five reasons: (1) he has completed a substantial portion of his sentence; (2) he will have a job and housing in a shelter upon his release; (3) medical treatment in his facility is subpar; (4) he aims to assist his daughter and parents upon release; and, (5) he has engaged in rehabilitative efforts while incarcerated. (ECF No. 77, at 1–2.) The Court addresses each argument in seriatim, concluding that none of these circumstances constitute an extraordinary and compelling reason for release.

### 1.   Mr. Jefferson's Completion of a Substantial Portion of His Sentence Does Not Constitute an Extraordinary and Compelling Reason for Release

Mr. Jefferson argues that the Court should order his release because he "ha[s] [completed] over half of the time [] on this sentence." (ECF No. 77, at 1.)  On February 15, 2027, the Court sentenced Mr. Jefferson to a total of 120 months' incarceration.  (ECF Nos. 30, 34.)  The Bureau of Prisons projects Mr. Jefferson's release date to be September 24, 2027.  *See Fed. Inmate Locator,* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 1, 2026).

The Sentencing Commission's policy statement does not list the percentage completed of a defendant's sentence among its enumerated extraordinary and compelling reasons warranting release.  *See generally* U.S.S.G. § 1B1.13(b).  To be sure, the policy statement provides that "any other circumstance or combination of circumstances" that "are similar in gravity" to the enumerated extraordinary and compelling reasons may support compassionate release.  *Id.* § 1B1.13(b)(5).  But Mr. Jefferson does not provide any authority supporting his argument that a defendant's completion of a portion of their sentence favors their release.

While some courts have considered the percentage completed of a defendant's sentence with respect to the application of the § 3553(a) factors, that percentage completed does not constitute the extraordinary and compelling reason for release that Mr. Jefferson must demonstrate before the Court may analyze the § 3553(a) factors.  *See United States v. Lewis*, No. 3:18-cr-138 (MHL), 2020 WL 6049913, at *5 (E.D. Va. Oct. 13, 2020) (finding that because defendant "completed the majority of his 30-month sentence," the § 3553(a) factors "favor[ed] granting relief" but did not constitute extraordinary and compelling reasons for release); *United States v. Ball*, No. 7:19-cr-00097, 2025 WL 2713768, at *4 (W.D. Va. Sept. 23, 2025) (finding

that defendant "ha[d] not identified any authority" suggesting that the percentage of defendant's sentence completed standing alone constituted an extraordinary and compelling reason and that "the court [was] aware of none"). Accordingly, the Court concludes that Mr. Jefferson's completion of a large percentage of his sentence does not constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

### 2. Mr. Jefferson's Circumstances Upon Release from Prison Do Not Constitute Extraordinary and Compelling Reasons for Release

Mr. Jefferson next contends that he will "still have a job when coming home" and that because he "will be homeless when stepping back out into society, [he] will go straight to the shelter [and] take it one day at a time." (ECF No. 77, at 1.) While both of these contentions may bear on the application of the § 3553(a) factors to Mr. Jefferson, neither contention constitutes an extraordinary and compelling reason that would allow the Court to apply the § 3553(a) factors. The "heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances" while incarcerated. *Rutherford*, 2026 WL 1485535, at *7. Mr. Jefferson's access to resources *after* his incarceration does not support his release from incarceration. The Court therefore concludes that Mr. Jefferson's access to resources after completion of his sentence does not constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

### 3. Mr. Jefferson Does Not Make a Sufficient Showing of Medical Circumstances that Would Constitute an Extraordinary and Compelling Reason for Release

Mr. Jefferson also argues that the Court should order his release because "it is not getting any better in the Institutions, it[']s getting wors[e], especially how they [are] handling medical, the treatment is bad." (ECF No. 77, at 1.) While the Sentencing Commission's policy statement makes clear that a defendant's medical circumstances may favor their release, Mr. Jefferson

14

again makes no particularized showing of any medical circumstances that would warrant relief. *See* U.S.S.G. § 1B1.13(b)(1) (describing "Medical Circumstances of the Defendant" that may constitute extraordinary and compelling reasons for release).  The Court denied Mr. Jefferson's previous Motion for Compassionate Release in which argued that his susceptibility to COVID-19 supported his release.  (ECF Nos. 59, 60.)  But Mr. Jefferson adds no new information regarding his medical circumstances that support his current Motion.  Accordingly, the Court concludes that Mr. Jefferson's reference to medical treatment does not constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

### 4.    Mr. Jefferson Does Not Make a Sufficient Showing of Family Circumstances that Would Constitute an Extraordinary and Compelling Reason for Release

Mr. Jefferson asserts that the Court should order his release because he "want[s] to get back out there and be [a] productive Dad," that he "still ha[s] his parents out there [and] they aren't getting any younger," and that his parents "[b]oth have medical problems." (ECF No. 77, at 1–2.)  Mr. Jefferson "wants to get back out there and help the best way [he] can" with his family.  (ECF No. 77, at 2.)  While the Sentencing Commission's policy statement makes clear that a defendant's family circumstances may favor their release, Mr. Jefferson makes no particularized showing of any family circumstances that would warrant relief. *See* U.S.S.G. § 1B1.13(b)(3) (describing "Family Circumstances of the Defendant" that may constitute extraordinary and compelling reasons for release).  The Court therefore concludes that Mr. Jefferson's reference to his family circumstances does not constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

**5.**      **Mr. Jefferson's Rehabilitation Alone Does Not Constitute an Extraordinary and Compelling Reason for Release**

Finally, Mr. Jefferson contends that that Court should order his release because he "has taken programs doing his time since being in, [and he] has learn[ed] a lot[] that will be applied when getting back to society." (ECF No. 77, at 1.)

As explained above, the Court concludes that Mr. Jefferson has not otherwise established an extraordinary and compelling reason to reduce his sentence. The Sentencing Commission's policy statement with respect to compassionate release motions provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of [the] policy statement." U.S.S.G. § 1B1.13(d). Rather, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances." *Id.* Because Mr. Jefferson has not established other extraordinary and compelling reasons to reduce his sentence, Mr. Jefferson's rehabilitation alone cannot serve as a basis for compassionate release.[5]

The Court therefore concludes that Mr. Jefferson's rehabilitation alone cannot constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

---

[5] Even assuming that Mr. Jefferson has established other factors on which the Court could find an extraordinary and compelling reason to reduce his sentence, Mr. Jefferson does not (unsurprisingly given his *pro se* status) provide proper evidence of his rehabilitation. He has not provided any certificates of completion of coursework, disciplinary records, or other documents that the Court could rely upon to determine the extent of his rehabilitation. *See United States v. Bueno*, No. 2:16-cr-08 (RBS), 2026 WL 510744, at *7–8 (E.D. Va. Feb. 24, 2026) (concluding that defendant failed to show his rehabilitation, combined with other factors, supported compassionate release even where defendant provided character letters and disciplinary records); *United States v. Claiborne*, No. 3:99-cr-297-1 (REP), 2026 WL 413415, at *8–9 (E.D. Va. Feb. 13, 2026) (concluding that defendant established his rehabilitation as a factor in supporting extraordinary and compelling reasons to reduce his sentence in part because defendant "presented substantial evidence to support his rehabilitation argument").

16

**D.      Element 3:  The § 3553(a) Factors Do Not Support a Reduction in Mr. Jefferson's Sentence**

Even if Mr. Jefferson were to satisfy the requirement for an "extraordinary and compelling" reason for his compassionate release, the § 3553(a) factors weigh against his release.  In the interest of creating a full record, the Court discusses those factors here.

First, the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), do not support reducing his term of imprisonment.  Mr. Jefferson's offense of conviction is undoubtably serious.  Officers discovered Mr. Jefferson in possession of multiple quantities of crack cocaine and heroin, as well as a firearm.  This conduct weighs against release.

Next, Mr. Jefferson's history and characteristics, § 3553(a)(1), do not support reducing his term of imprisonment.  While the Court commends Mr. Jefferson for engaging in rehabilitative efforts, Mr. Jefferson has not provided the Court any other argument with respect to his history and characteristics that would counsel in favor of a reduction of his sentence.  And Mr. Jefferson has a substantial criminal history, resulting in his Criminal History Category of IV.  (ECF No. 25 ¶¶ 103–04.)

The Court must also consider the need for the sentence to protect the public. § 3553(a)(2)(A), (C).  Mr. Jefferson contends that he will "still have a job when coming home" and that because he "will be homeless when stepping back out into society, [he] will go straight to the shelter [and] take it one day at a time." (ECF No. 77, at 1.)  But Mr. Jefferson provides no detail on what that job would be.  The Court cannot find on the current record that Mr. Jefferson's release plans would sufficiently protect the public.

The remaining factors, including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and avoid unwanted sentencing disparities, weigh in Mr. Jefferson's favor.  § 3553(a)(2)(A)–(B), (a)(7).  Mr. Jefferson has served the majority of his

17

sentence. Nevertheless, given the nature and circumstances of the offense and the need to protect the public, the Court will not reduce Mr. Jefferson's sentence.

On balance, the § 3553(a) factors do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which he was sentenced. Mr. Jefferson's 120-month sentence is sufficient but not greater than necessary to reflect the seriousness of his offense. The record before the Court does not justify Mr. Jefferson's early release from federal imprisonment.

## IV. Conclusion

For the reasons articulated above, the Court will deny the Motion for Compassionate Release, (ECF No. 77), and grant the Motion to Withdraw, (ECF No. 84).

An appropriate Order shall issue.

Date: 6/18/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge

18